We have two cases for argument on the calendar today. The first is Gasson against Premier Capital. So we'll hear from counsel for the appellant, Mr. Bronson. Good morning, your honors. May it please the court. My name is Bruce Bronson. I represent the appellant, Mr. Anthony Gasson in this matter. This is, as cases, as appeals go, this is a relatively straightforward case based on bankruptcy code section 727A2A. The case was first decided by Judge Lane, where the appellant, Mr. Gasson, appeared pro se in an adversary proceeding. And Judge Lane, in a thoughtful, lengthy opinion, determined that Mr. Gasson should not be entitled to a discharge, purely under section 727A2A. He rejected two other arguments of the plaintiffs in that case that dealt with other sections of Judge Lane did not find that those were issues for determining that Mr. Gasson should not get a discharge. My main point, Mr. Gasson's main point on appeal today, is the standard of review. The standard, first of all, the standard that Judge Lane applied when determining the evidence of to grant the discharge or not, it appears from the Judge Lane's opinion that he used a standard, a more likely than not standard, where he stated the credible evidence. But the standard that he should have used is preponderance of the evidence. Is the preponderance of the evidence the same as more likely than not? I don't believe so, Your Honor. That's what, in ten years as a district judge, that's usually what I told juries to explain to them what preponderance of the evidence means. And as a torts teacher of 60 years, that's what I usually said in torts cases. So we could be wrong, but tell us why. Your Honors, I'm sure you're not wrong. But yeah, it's just preponderance of the evidence is not mentioned in Judge Lane's opinion. He was not giving the defendant in this case. But why should there be any deference at all? If the side that has the burden of proof proves what it has to prove by a preponderance of the evidence, meaning more likely than not, you know, with a preponderance test, as I've always understood it, the only time that really comes into play is if the fact finder is in equipoise. If you can't decide one way or the other who's right, then the party with the burden of proof fails. Well, Your Honor, Judge Roman, in the appeal on this case, made a statement stating that under a less deferential standard, this court might credit Appellant's argument that the use of Soroban as a vehicle for operating his consulting business was not intended to defraud creditors. That's his standard on appeal. That's our standard. We have to give deference to the fact finder. And if we thought, if I were sitting there, I would decide this case the other way, that's not good enough, right? It has to be clear error for us to reverse a district court, or in this case, a bankruptcy court that we review directly. Your Honor, it's clear error when it's a factual issue. In this case, the question- But come now, isn't the evidence in this case sufficient so that on any standard, what they did was all right? I mean, maybe not beyond a reasonable doubt, but on any kind of civil standard, isn't the evidence so that if we really had to look at it again ourselves, isn't this an easy case? Judge Roman did not think so, Your Honor. Judge Roman clearly stated that he would have decided differently. So if we think we should follow Judge Roman, then we affirm against you, because after thinking hard and strong, he came out that way. And while he may have said, he said it in one way or another, but that's basically right. But then if instead we don't and look at it, then can't we pretty well decide? So either way, I mean, for me, the only issue in this case is the question of a one-year as against the earlier time, and that every circuit has said continues, applies. We haven't made an opinion on it directly, although Learned Hand, Augustus Hand, and the unspoken Manton decided this by summary order in 1938 that it applies. So maybe it's not really an open issue, although I know I haven't found a direct opinion of hers. Your Honor, respectfully, as far as a standard review of this court and that Judge Roman should have used, it should have been a de novo review. And yes, you could find under a de novo review against appellant, clearly. Well, I mean, I'm afraid I have to disagree. I don't see how it can be a standard of de novo review. There is, and you may be confusing, with all respect, two things. We review the bankruptcy court de novo in the sense that we don't give deference to the district court's opinion. But we do the same thing to the bankruptcy court that Judge Roman did in the district court, which is review fact findings for clear error, legal rulings de novo, ultimate discretionary decisions for abuse of discretion, just as any appellate court always does with lower court rulings. But perhaps in the time remaining, Judge Calabresi suggested that the real issue in this case, on which I think this court has not formally opined, is the question of whether a concealment that began more than a year before and continues into the one-year period before the bankruptcy qualifies under the statute. So perhaps you'd like to address that. Yes, Your Honor. In order for there to be intent to hinder with concealment over the past year, there has to be a secret interest. And there was no secret interest in this case. In fact, Sarbant was formed in 2001, about three years before the judgments, the Chase judgments, came into existence. Mr. Ghassan clearly was the CEO of that company. It states that in the Secretary of State records to this day. So there was no secret interest that could be determined. And the idea that concealment would continue for a 10-year period, because Judge that, you know, that is even beyond the six-year statute of frauds in the state of New York. So I think that kind of expansion of 727A2A would be very deleterious to the bankruptcy process in its entirety. Judge Drain, in the case In re Clutchco, analyzed many different factors, and in fact found that if there was a nominal interest, that it wouldn't be considered intent to hinder or conceal. But this isn't a nominal interest. This is, the point is, this company is ostensibly his wife's. And the evidence certainly could reasonably be read by the fact his wife didn't do anything. She never got any money out of it, really, because he controlled her bank accounts as well as the bank accounts of the company. And he was able to spend for his own benefit out of that, those funds. Now, that may or may not be anything otherwise improper about that. But if you're going to declare bankruptcy and leave out that you have this ongoing business which is generating substantial income for you, that would seem to be a problem. But, Your Honor, it wasn't left out, number one. It was in the Statement of Financial Affairs in the bankruptcy filing. And, you know, I look at it the other way. Had I been doing the bankruptcy for Mrs. Casson, I would... But the 2012 filing was not a complete and accurate filing. It had any number of problems. So it wasn't just what happened before. Something happened in 2012, in your mind, which was not proper. So my question then is how far does that continue and go back or not? But you can't say that that 2012 filing was an accurate filing. Your Honor... At least, you can't say that the findings of the fact finders that it was not are so clear error that we can reverse it. Your Honor, it's just, in putting a bankruptcy petition together, I personally would never have put down that the stock was owned by Mr. Casson when the wife owned it as of title. And the trustee, the Chapter 7 trustee, now Judge Gordon-Oliver, you know, at the time, did not find that there were any problems that required even amendments to the petition. All right. Thank you. Thank you, Your Honor. I think we have your argument and you have a minute for rebuttal. Thank you. Ms. Mellicott? First of all, did I pronounce that correctly? It's good, Your Honor. It's pronounced Mellicott. Mellicott. Mellicott. Mellicott. Thank you, Your Honor. And may it please the Court, my name is Eleni Mellicott and I represent Appalee Premier Capital, LLC. So as the opposing counsel stated, it's a very straightforward case. Speak right into the microphone because it's... Yeah, I apologize. You don't need to take your mask off, but just speak right into the microphone. Okay. You can move the microphone and you can also elevate the podium. There's a little switch there if you need to. Oh, all right. Can you hear me now? Yes. Okay, perfect. Thank you. Thank you, Your Honor. Thank you. Thank you. So this is a very straightforward case. It's a case of intent. So to address the standard of review. So what the appellant essentially asks for is for this court to disregard a 40-page decision of the Honorable Judge Lane of the Bankruptcy Court and substitute it with his mischaracterizations of facts and evidence. We have a 40-page decision where after a three-day trial where the court was in the best possible position to hear the testimony of five witnesses, assess the credibility of these witnesses, and of course, review the extensive documentary evidence of the record. So it's well-established that the question of 727A is a question of fact and the court will normally look at the debtor's general course of conduct and surrounding circumstances. So the court will normally make inferences of fraudulent intent. For example, let's hear whether the debtor transferred his assets to a family member or another insider while he was in financial distress, while at the same time he retained the benefits. Counsel, I've got a question. Do we need, and you heard some of the questions from my colleague, do we need to recognize the doctrine of continuous concealment in order to affirm the decisions of this court and the Bankruptcy Court? Thank you, Your Honor. So for this particular case, the doctrine of continuing concealment is a red herring. So it's not necessary because the court does not need to look further than the one-year pre-petition period. Here, the Bankruptcy Court, the trial court, made factual findings as to the debtor's conduct at the critical year. So you're saying that what happened in the one year before was sufficient to do that. So even though Judge Roman, perhaps a little carelessly, looked back to 2002 instead of looking to the one year before, that given what the Bankruptcy Court found, we can say that there was concealment in that one year without addressing the issue of continuous concealment. Thank you, Your Honor. So the trial court made factual findings showing the debtor's intent to defraud the creditor during the one year prior to the filing of bankruptcy. However, the court also addressed the debtor's intention when he formed Soroban in 2001. So in particular, the trial court found that the concealment indeed began with the creation of Soroban itself back in 2001. However, the way that the debtors arranged his affairs was to defraud his creditors because he concealed his interest to Soroban and his income. And this particular fraudulent intent was continuing until the year, one year prior to the filing of bankruptcy. So one year within the year, sorry, during the critical year prior to the bankruptcy petition, the court found that the debtor continued to conceal his assets. He diverted his assets to his family members. He had the exclusive control of Soroban. He received the benefits from Soroban. He paid his personal credit cards. Excuse me, he maintained no bank accounts. How clear is it that apart from a continuous concealment theory, actions were taken in the last year that suffice? And how clear is it that a finder of fact found that to be the case rather than relying on continuous concealment? That's my question. Because even assuming we agree with you, if it's one thing we have to address the question of continuous concealment, which circuits have found, but which we don't have a direct decision of our court. Okay, thank you, Your Honor, for the question. So I think it's clear from Judge Slane's decision. It's very clear that from the facts and the evidence of the record. Are you focusing on the bankruptcy judge and what he found? Are you focusing on the trial judge? Now, we look to the bankruptcy judge primarily. On the other hand, if there's something that is inconsistent with that at the trial judge, then we have to deal with it. So which are you focusing on? Because first you said trial, now you're saying Lane. Well, you're saying the bankruptcy judge was the trial judge. He presided over a trial. The district judge, the district judge who's normally a trial judge in cases that come to us is really in a court of appeals here. So you've been talking all along about Judge Lane and his opinion. That's correct, Your Honor. So I am focusing on Judge Lane's decision, the bankruptcy court judge. And based on the evidence and the record review, it's clear that the factual determinations that prior to the bankruptcy filing are sufficient to serve the debtor's intent. And in the alternative, the court may apply the continuous concealment doctrine theory. Judge Lane made, again, some factual findings and found that Mr. Besson formed this entity under his wife's name in order to insulate himself and assets from the creditors. Ms. Maleku, let me venture a statement of law and if you agree with it. The statute says that if you transfer or conceal property during the year preceding the bankruptcy, you're not entitled to a discharge. You're saying that the bankruptcy judge found that there were active acts of concealment during that year. And that perhaps we would not need to rely on the continuous concealment doctrine, which might apply if, for example, the bankrupt party had buried treasure somewhere 10 years before and then does nothing thereafter except leave it, knowing that someday X marks the spot and he'll go back and dig it up. That would be continuous concealment on the assumption that nothing happened at all in that year. And that's where we would have to address that doctrine. Is that what you're suggesting? This is correct, Your Honor. Mr. Besson continues concealed his assets and his income. But if we continue his actions of concealment and- I'm confused. You're saying continuous actions. Are you saying individual specific acts in that year or simply a continuity of something that was begun before? Which of the two are you saying? Or are you saying that there was a finding of both? It was a finding of both, but primarily the court focused on his actions during the year prior to his bankruptcy filing. And that's continuous in a somewhat different sense. He's continuing to do what he had been doing all along, but he continues to do it during the year before. So there are actions during that year, not just that there's something that was hidden long ago and stays hidden. We have a separate action that was his responses to Premier's informational subpoena. So he was served with, in April 2011, Mr. Besson was served with informational subpoenas from Premier. And he was informed that Premier is going after him to enforce the North Carolina judgments entered against him. So he was fully aware that, excuse me, that was in April 2012. So in April 2012, Mr. Besson responded incorrectly and the court found it fraudulently to the informational subpoena served by, I'm trying to find my notes. I apologize, Your Honor. So he essentially stated that he had no income, he had no affiliation or ownership of another business entity. So the court found- The point is that with respect to the informational subpoena, he lied and tried to conceal in response to that, the assets that he actually, right? I apologize, Your Honor. Could you please repeat the question? Your point is a very simple one that in response to the informational subpoena that year, he tried to conceal by lying in response to the subpoena. That's correct, Your Honor. Yes. Can I just turn very briefly to another issue that I wonder whether we need to address? And you might be able to help me at least. So the underlying concealment theory itself relies on, as I understand it, a diversion of assets theory, is that right? It could be. It could be. I think there are, based on my understanding, the continuous concealment doctrine could rely- No, no. In this case. Oh, in this case. This is a theory. Yes. Essentially, Mr. Gasson formed an entity to, as a safe harbor from his creditors. He was aware that there were several legal actions against him based on the personal guarantees he executed to secure certain loans for his previous businesses. But what's going on here, essentially, according to you and to the theory that the bankruptcy judge adopted, is that he had a hidden interest. That is to say that he pretended this company wasn't his, but he was the de facto owner because he had dominion and control. Isn't that the- That's correct. And the court made this particular factual finding after hearing the testimony from his spouse and daughter. So the court found, for example, that within a year prior to the bankruptcy petition, the debtor wrote checks to his daughter in the form of loans for her business venture. Or, for example, his wife received allowances from Soroban without being an employee. And also, he couldn't explain why his other children received payments from Soroban in the form of allowances while they didn't work for Soroban. Is that the same thing as a diversion of assets theory? What is your- So you're relying on a different theory, as I understand it from your answer. Is that right? Your Honor, I don't think that I rely on different theories. I think it's very straightforward. The court looked the year, the critical year prior to the filing of bankruptcy. It was clear that Mr. Gasson had the intention to defraud the creditors, to conceal his assets, or to transfer his assets to certain insiders. Right. But what he was concealing was his interest in and income from Soroban. That's correct, Your Honor. Or, just to- It always goes back to the same thing. This company that was set up- Your Honor- The fact that it was set up long before doesn't mean that this wasn't done in that year before bankruptcy. I would like to address that. So, Soroban was a sham corporation that the debtor just formed in order to defraud the creditors. The debtor had a business, a consulting business. So, he just used Soroban as a sham corporation, as the front. He essentially concealed his and the income he derived, the fruits of his profession. So, he used this sham corporation in order to shield himself from his creditors. And I believe that there is no- That is, so that is, as I understand it, having read our summary order in Boyer, aimed a version of assets theory. Yes, Your Honor. Okay. And we, so maybe you might be able to help me with this. Have we embraced that theory outside of some summary orders? Aside from, excuse me, Your Honor, I didn't hear- Aside from Boyer and a few other summary orders, and forgive me if you can't hear me, but aside from summary orders, have we embraced that theory in a precedential opinion? This is a very good question, Your Honor. Yeah. Yeah, yeah, yeah. I apologize for that. Yes, indeed. There is a case in Ray Kaiser where all the subsequent cases of the circuit have relied on. Okay. Well, we'll check that, we'll check that out. We've kept you well past your time. Thank you very much for your argument. I think we understand it. And Mr. Bronson has one minute. Thank you, Your Honor. Thank you. Well, Your Honor, Sorbonne, like many small companies, is a flow-through entity. And Mr. Gascon clearly worked there. The facts are not in question. And the income came to him and his wife. And his wife owned the stock, and they put the income on their tax returns. The wife surely, I mean, it's beyond credibility that they didn't discuss making loans to his wife. To their children out of this small company, which would not have been improper. And so, I don't see how it would have been any different if Mr. Gascon had owned the stock himself. There was no asset here that a creditor could glean onto in order to- He said that all the earnings of this company were what he was doing. And under New York law, 10% could potentially be garnished. Not all of his earnings. And in Wray-Klutchko, Judge Drain did an analysis- Although Wray-Klutchko goes against- You know, Judge Drain found there not to be- Well, found there's no discharge in that case. But he did go through all these factors and discussed how, in some cases, where there's no real assets there, that he wasn't going to find that the debtor was not going to be given in discharge. Okay, I think I understand the point. Thank you both very much for your arguments. We'll take the case as submitted.